Schearff et al. vs. Dodge.

## SCHEARFF ET AL. VS. DODGE.

1. **MORTGAGE:** *Lien of, discharged by payment or tender at the law day.*
   Payment or tender of payment at the time mentioned in the condition of the mortgage, or payment *before* then, saves the breach of the condition, and discharges the lien and revests the legal estate in the mortgagor. In cases of tender, the debt still subsists as a personal liability against the mortgagor. But in the case of a sale by title bond, neither tender nor payment of the purchase-money divests the legal title of the vendor, nor does tender extinguish his lien on the land.

2. **TENDER:** *In bill for title, tender must be kept good.*
   A vendee under a title bond asking a decree for title, must tender and bring the unpaid purchase-money into court before he can obtain a decree for title.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*Duffee & Hill*, for appellants.

*Dodge & Johnson*, contra.

TURNER, S. J.:

This is a suit in equity to enforce a vendor's lien on a title bond.

The complaint states that the plaintiff, R. L. Dodge, being the owner of the south half of block No. 246, west of the Quapaw line, in the City of Little Rock, did on May 1, 1868, sell the same to the defendant Charles Schearff, for the sum of $800, and thereupon executed to the said defendant a bond for title thereto, conditioned that upon the payment of the purchase-money as agreed and specified in said sale, and the building of a house upon the property as stated in the title bond, together with all future taxes thereon, then in that case the plaintiff bound himself to execute and deliver to the defendant a deed of conveyance in full of the legal title to the property.

That the defendant Schearff has paid to the plaintiff the

sum of $550, part of the purchase-money, leaving still unpaid his last note, dated May 1, 1868, for $250, with interest at ten per cent per annum from date until paid, no part of which has been paid except the sum of $25. That the defendant Augusta W. Lange purchased from her co-defendant Schearff all or part of said premises with a full knowledge that he had not paid the balance of the purchase-money. That demand has been made on the defendant Lange for the balance of the purchase-money and a deed tendered her as agreed upon and promised in the title bond, but that the defendant Schearff is nowhere to be found, and the defendant Lange has refused to pay said money. That the plaintiff has a vendor's lien upon the premises, wherefore he prays judgment against the defendants, Schearff and Lange, for the sum of $700, with costs, and in case of default of the payment thereof, that the premises may be sold, and the equity of redemption foreclosed.

With the original complaint is exhibited and made parts thereof a copy of the title bond, also of the note for the balance of the purchase-money and of the deed tendered to the defendant Lange.

The defendant answered, alleging that on the —— day of December, 1869, she purchased from her co-defendant Schearff the real estate in the complaint mentioned, and admits that the plaintiff sold the land to her co-defendant Schearff for the sum of $800, and executed to him a title bond therefor of the tenor and effect as described in the complaint; that the amount of purchase-money was divided into four payments, evidenced by the writings obligatory of the defendant Schearff, bearing interest at the rate of ten per cent per annum from May 1, 1868, until paid, all of which have been paid except the fourth and last installment for $250, which was due May 1, 1871; that on May 3, 1869, the sum of $25 was paid upon said last installment, being one year's interest; and that on May 1, 1871,

the day on which the fourth and last payment became due, the defendant, by A. W. Lange, her husband, tendered to the plaintiff the full amount thereof, with all interest due thereon, in legal-tender notes, and demanded of the plaintiff that he receive the same and deliver to her a deed for the land, as provided for by the title bond. That she kept the money deposited for a long time with John Reigler, in the city of Little Rock, with the full knowledge of the plaintiff, as a continuing tender, but that plaintiff refused to accept the same or make her a deed to the land, giving as a reason for his refusal that the defendant Schearff had sold the land before full payment, and had neglected to put up thereon a residence and other improvements. But that afterwards, on February 2, 1876, the plaintiff tendered her a deed for said land, conditioned that she would pay him the said last installment for $250, with interest from May 1, 1868, until said February 2, 1876, at the rate of ten per cent per annum, which defendant refused to do ; whereupon plaintiff refused to deliver the deed.

The defendant further alleges that when she offered to pay said last installment in full, and demanded a deed for the land, it was worth $2,300 ; at which time she was offered said sum in cash for the land provided she would procure a deed therefor, and that in consequence of the plaintiff's refusal to make such deed she lost said trade and the $2,300 offered for the land. That the land has depreciated in value, until now it is not worth more than $1,000, and could not be sold for more than that amount even on long time. Wherefore she alleges that she has by said refusal of the plaintiff been damaged to the amount of $1,300, with interest thereon from May 1, 1871.

Defendant further alleges that all taxes were duly paid up to and including May 1, 1871, at the time of the tender, and since, including the year 1873 ; that she is advised that the plaintiff, by reason of his refusal to accept the tender, lost

whatever lien he might have had on the land for the payment of the purchase-money and has no equities to be enforced.

Defendant further insists that if mistaken in this, she is at least entitled to an abatement of interest on said last-mentioned installment from the time of the tender of payment until the tender of said deed, February 1, 1876, and that she is entitled to all of her damages occasioned by reason of plaintiff's refusal to make the deed on May 1, 1871. Wherefore defendant prays the court to ascertain the true amount of damages to which she is entitled, and the actual amount due on said land, and that plaintiff be required to make the defendant a warranty deed for the same.

The plaintiff filed an amended complaint making Augusta W. Lange a defendant to the suit, and the defendant filed an amended answer averring the tender of payment to have been made on May 1, 1871, instead of April 30, 1871, as averred in the original answer; and these were the only material changes in the original complaint.

The plaintiff demurred to defendant's amended answer, and for cause of demurrer to the second paragraph, wherein the defendant sets up a counter-claim or set-off, the plaintiff says:

1. That the said second paragraph does not set up facts sufficient to constitute a good cause, counter-claim, or set-off; and,

2. There is no equity set up in said paragraph.

And for cause of demurrer to so much of the first and second paragraphs as alleges that the said R. L. Dodge, by his refusal to receive the purchase-money when due and tendered, lost his vendor's lien mentioned in said bill, plaintiff says:

1. That the same does not set up facts sufficient to constitute a good cause of defense; and,

2. Because there is no equity in said defense.

And plaintiff demurs generally to the defendant's amended answer, for the want of equity.

At the September term, 1876, of the Pulaski Chancery Court, this cause, by consent, was submitted to the court on the demurrer to the first and second paragraphs of the answer ; whereupon the said demurrers were sustained by the court.

And at the same term of the court (January 13, 1877), the parties appeared by their solicitors, and the defendants electing to stand on their answer so demurred to, and demurrer sustained by the court, and defendant refusing to answer further, the court adjudged and decreed that the plaintiff, R. L. Dodge, have and recover from the defendant Charles Schearff the sum of four hundred and forty-two and 42-100 dollars for his debt, with interest at the rate of ten per cent per annum, as damages, and all costs expended in the suit ; and further ordered, adjudged, and decreed that the said sum as specified be declared a lien upon the following lot of land, to wit : "The south half of block No. (246) two hundred and forty-six, west of the Quapaw line in the City of Little Rock, bounded on the north by the north half of block 246, east by Izard street, on the south by Sevier street, and on the west by Chester street, situated in the City of Little Rock ; and that unless said debt, damages, and costs be fully paid and discharged on or before the first day of June, 1877, that all right, title, interest, claim, and equity of redemption of the said Charles Schearff, Augusta Lange, and A. W. Lange be forever barred and foreclosed herein, and that John W. Callaway, who is hereby appointed a commissioner of this court in this cause for that purpose, shall advertise the said lot of land for sale for at least four weeks' insertion in some weekly newspaper published in the City of Little Rock, to be sold at the front entrance to the building in which this court is held, on a credit of three months, the purchaser to give bond and approved security for the purchase-money ; and the said commissioner shall make report of his proceedings in writing to this court as soon as possible there-

after, and all the rights and equity of redemption of said de-
fendants Charles Schearff, Augusta Lange, and A. W. Lange
to said real estate are hereby barred and foreclosed.· To-which
decree defendants excepted and appealed to this court.

The demurrers question the sufficiency of both the first and.
second paragraphs of the defendants' answer.

The demurrer to the first paragraph raises the question as to·
the sufficiency of the tender. Was it a good tender? and, if
so, how did it affect the debt and interest? or, if not good,
did it retain the plaintiff's lien or interest in the land sold?'
As we have seen, this suit is founded on a sale of real estate by
title bond, a mode of conveyance long in use not only in this
State, but it is believed in most of the States in the Union..
Such a sale has been likened unto a mortgage, the *vendee* oc-·
cupying the relation of *mortgagor*, and the *vendor* that of
*mortgagee*. Not in form it is true, but in substance, a mort-
gage, with the usual incidents of a mortgage. This court has
repeatedly so decided, and so have the courts of Tennessee,
Alabama, Mississippi, and other States. These decisions rec-·
ognize the contract of sale by title bond as having the legal
effect of creating a mortgage lien upon the estate sold, for the
security of the unpaid purchase-money, as effectually as if the
vendor had first conveyed the whole estate by deed, and simul-·
taneously had the same reconveyed to him by mortgage-deed.
See *Smith et al.* v. *Robinson*, 13 Ark. 533 ; *Harris* v. *King*,
16 Ark. 126 ; *Moore* v. *Anders*, 14 Ark. 628 ; *Hall* v. *Denckla*,.
28 Ark. 506 ; *Johnson et al.* v. *Nunnelley*, 30 Ark. 153.

But notwithstanding the resemblance by implication of such
a contract of sale to a mortgage, the analogy is not in all
things complete.

At common law a mortgage is regarded as a conveyance in·
fee, the legal title vesting in the mortgagee, while the equity
of redemption remained in the mortgagor ; and this construc-·

tion has been thought best adapted to give to the creditor full protection in pursuing and enforcing his security, while the mortgagor is secured in his right to redeem.

This is the doctrine of the English courts, and, we think, a majority of the American States, including Arkansas, have adopted the same construction of the law. Some of the States have modified it to some extent, mostly by statute, it is believed, so that a mortgage is regarded in those States merely as a pledge, the rights and remedies under it being wholly equitable.

In the case of a sale by title bond, the vendor does not convey the legal estate to the purchaser, as in the case of a mortgage, but reserves and retains it in himself, as a security for the payment of the purchase-money, and he is only bound by the express terms of the contract to convey the legal title to the purchaser upon the payment of the purchase-money, or the doing of some other act required to be done by the terms of the contract.

In the case of a mortgage, payment, or tender of payment, at the time mentioned in the condition of the mortgage, or payment before the day named in the condition, saves the breach of the condition and discharges the mortgage lien, and invests the legal estate in the mortgagor without any reconveyance, by the simple operation of law; but the debt subsists as a personal liability in cases of *tender*, after the estate is divested, and may be recovered as such by an action at law. See 2 Jones on Mort., secs. 891, 892, 886; 34 N. J. 496.

But in the case of a sale by title bond, the payment, or tender of payment, at the time mentioned in the bond, or at any other time, does not divest the legal title of the vendor, and does not by operation of the law, or otherwise, vest any legal or other title in the purchaser (mortgagor) than that which he previously had; but if the vendor fails to make the

purchaser a legal title to the premises sold, upon payment, or tender of payment, properly made and demand therefor, he can then successfully appeal to a court of equity for relief and ask its decree for the legal title to the premises. In the meantime, the purchaser must keep his tender good, and bring the money into court before it will decree him a legal title.

In this cause it is contended by learned counsel that inasmuch as the defendant Lange, who had succeeded to the rights of her co-defendant, Schearff, tendered to the plaintiff full payment of the principal and interest of the last installment of the purchase-money on the day when due, that therefore, by analogy to the case of a common-law mortgage, the lien is discharged. Can this conclusion be true?

We have seen that by the terms of the contract of sale there is no binding obligation on the vendor to make title to the purchaser until the whole of the purchase-money is paid. If this be so, by what process can the purchaser acquire a legal title to the premises? It can only be done through the aid of a court of equity, consequent upon the payment of the purchase-money, or a good tender and refusal, and demand of title from the plaintiff, and until this is done the legal estate remains vested in the vendor. It was reserved in the vendor by the contract of sale as a security for the purchase-money, and can only be divested by the decree of a court of equity or by his voluntary conveyance.

The learned counsel for the defendants admit that if the *defendant* Lange had sought the aid of a court of equity, setting up her tender and demanding a deed, the court would have decreed her a title upon payment of the amount called for in the bond, abating the interest from the date of the tender of the money until tender of the deed by plaintiff.

True the *defendant* does not come into a court of equity asking a decree for title to the real estate sold, but the *plaintiff*

comes into equity, making the defendants parties to the suit, seeking to enforce the vendor's lien on the real estate sold, to secure the remaining balance of the purchase-money. The parties were all before the court, each claiming certain equitable rights; and the court may well take cognizance of the whole case and adjust the equities of all the parties to the suit and render such decree in the premises as the principles of equity may seem to warrant, and this without doing violence to the oft-quoted equity maxim, that *"he who goes into a court of equity asking equity, must do equity."* Assuming that the contract of sale by title bond is to all intents and purposes a mortgage, and governed by the rules of law applicable to a common-law mortgage, was the tender, under the circumstances of this case, such a tender as would discharge the vendor's lien? We think not. Referring to the title bond exhibited with the original complaint and the answer, we find the following *proviso* embraced in the bond, and constituting a part of the contract: "Provided, however, that said Charles Schearff shall not dispose of said property, or any part thereof, until he has fully paid for it, or until he has put up a residence thereon and made such other improvements as his means will allow, within three years from date."

Before the purchase-money was paid, or the tender made, the defendant Schearff sold the land to his co-defendant, Lange, nor is it pretended that the defendants, or either of them, ever put up a residence on the premises or made other improvements thereon, as required by the terms of said proviso, and therefore the plaintiff may have well refused to accept the payment tendered, because of the failure of the defendants to comply with certain provisions of the contract intended for the benefit of the plaintiff. It may have been unwise for the plaintiff to refuse the money when tendered, but we think he had a right to do so without compromising his

lien upon the real estate sold. Applying, then, the most rigid rules of law applicable to the common-law mortgage in their bearing on the effect of tender at the law day, the lien, we think, remains in full force.

If the tender of payment had been made when the last installment became due and the other provisions of the title bond had been complied with, still the vendor's lien would not be affected. The legal estate being in him, the purchaser has merely an equity of redemption in the land, and no act of his can possibly affect the vendor's title, nor can he in any way be divested of it except the purchaser fulfill his contract, and by that means become entitled to a conveyance. If then the vendor refuses to convey the legal estate to the purchaser, he can appeal to a court of equity and ask that the legal title be decreed to him according to the terms of the contract.

The effect of a tender properly made is to stop interest on the debt tendered, and to relieve the party making the tender from the burden of all costs subsequently made in any proceeding to redeem or foreclose the mortgage, but in this case it can have no such effect.

The defendant having failed to pay the last installment of the purchase-money, the plaintiff tendered the defendant Lange a deed for the land, and demanded payment of the remaining purchase-money, with the interest due thereon, which being refused, the plaintiff instituted this suit for the foreclosure of the title bond.

The view we take of the matters of defense set up in the first paragraph of the answer disposes of the counter-claim for damages set up in the second paragraph; for if there has been no payment of the last installment of the purchase-money, and no valid tender of the money, certainly the defendant Lange can have no legitimate claim for damages because of the plaintiff's failure to do a thing which, under the circum-

stances, he was not bound to do, and we do then deem it wholly profitless to indulge in speculations concerning the depreciation in the value of the real estate sold, since the alleged tender of payment.

We think the demurrers to the first and second paragraphs of the answer were rightly sustained; and as we find no error in the Chancellor's decree, it is in all things affirmed.