STEWART *v.* SCOTT.

Decided February 7, 1891.

1. *Set-off—Unliquidated damage.*

Unliquidated damages, even when arising from a breach of contract, are not the subject of set-off. Appellee sold appellant certain timber, to be delivered at the stump at a fixed price per thousand feet and the expense of cutting. Appellant subsequently, with appellee's acquiescence, volunteered to cut the timber himself, and did cut about half the agreed quantity, but refused to take the residue. In an action upon a note for merchandise by appellant against appellee, the latter sought to set-off damages arising out of the breach of the above contract. *Held,* That, as to the residue of the timber, the contract was executory; that appellee, having made no offer of the delivery of the timber at the stump and having retained the trees in their natural state, could recover, not the contract price of delivered timber, but only the damages sustained by reason of appellant's breach of contract; but that such damages, being unliquidated, could not be pleaded as a set-off.

2. *Contract against public policy—Trespass by mortgagor.*

A contract to sell timber to be cut from mortgaged premises, made by the mortgagor in possession but without the mortgagee's consent, is not against public policy as being in contravention of the statutes which prescribe a punishment for trespassers who cut timber upon the lands of another (Mansf. Dig., 1658 *et seq*).

3. *Illegal contract—Sale of mortgaged property.*

A contract to sell timber to be cut from mortgaged premises, made with intent to defraud the mortgagee, is illegal and void, under Mansf. Dig., sec. 1693, as amended by acts 1885, p. 120.

APPEAL from *Clark* Circuit Court.

RUFUS D. HEARN, Judge.

Stewart sued Scott upon a note and account given for merchandise and supplies aggregating about $3900. Scott pleaded a set-off for $5200 for the purchase of certain standing timber which he had sold to plaintiff, to be delivered at the stump. Some of the timber had been delivered when the suit was brought, but about half of the timber was still standing. At the time this contract was made there was a subsisting and unsatisfied mortgage from Scott to Shattuck & Hoffman, of New Orleans, covering the land upon which the timber was standing. They neither knew of nor consented to the cutting of the timber from the land.

There was a verdict and judgment for $545 in favor of Scott on his set-off. Stewart has appealed.

*J. H. Crawford* for appellant.

1. Defendant's claim sounds in damages, growing out of an unexecuted contract, in its nature uncertain and unliquidated; and it cannot be made the subject of a set-off. Mansf. Dig., sec. 5036; 4 Ark., 527; 30 Ark., 50, 55; 31 Md., 12; 100 Am. Dec., 49; 12 Or., 169; 6 Pac. Rep., 766; 118 Ill., 612; 9 N. E., 201; 4 Johns. Chy., 287; 2 Edw. Chy., 73; Newm. Pl. & Pr., p. 584; 48 Mich., 218; 12 N. W., 167.

2. The contract was void, being against the law. Mansf. Dig., secs. 1658–1662. The trustee or mortgagee was the owner of the lands. 2 Johns. Chy., 148; 1 Wall., 53; Boone on Mortg., sec. 102; 11 Ark., 104. Contracts that contravene the law are void. 25 Ark., 209; 32 *id.*, 631; 1 Bin., 110; 2 Am. Dec., 417; 29 Ark., 386; 11 Wh., 271; 4 S. & R., 157; 8 Am. Dec., 682, and note; 10 Am. Dec., 491; 25 *id.*, 71; 53 *id.*, 742; 62 *id.*, 564; 87 *id.*, 527; 3 Am. Rep., 706; 25 Am. Rep., 106, and note; 1 Hill. on Cont., p. 344 *et seq.*

*Murry & Kinsworthy* for appellee.

1. The set-off does not sound in damages. Appellee sold appellant the timber on 900 acres of land at 50 cents per 1000. He is not suing for a breach of the contract, but for the amount due him under the contract which can be

reached by a mere calculation. It is a debt due by contract, and is a proper set-off.

2. Appellee sold the timber subject to the deed of trust, and this he had a right to do. 43 Ark., 499, 504; 30 *id.*, 407; 5 Am. St. Rep., 790; 10 Paige, Chy., 49; 38 Kans., 363. As between mortgagor and mortgagee the legal title is in the mortgagee; but as to all others it is in the mortgagor, and may be conveyed by him, subject to the mortgage. 32 Ark., 478; 7 Cow., 71; 9 L. C. ed. N. Y. Ct. App., 280. Scott conveyed to Stewart the same right that he had, and it was no crime as against public policy for him to buy it. Tied. Real Prop., par. 318, 333; 7 Johns., 278; 9 Paige, Chy., 132. It was no offense under secs. 1658–1662, Mansf. Dig., if appellee had cut the timber and appellant merely succeeded to appellee's rights. A party cannot, while retaining the profits of a transaction, allege that it was without legal validity. 13 Cent. Rep., 305; 85 Ala., 158; 23 N. Y. S. R., 912.

COCKRILL, C. J. It is conceded that the only questions arising upon this appeal relate to Scott's set-off to Stewart's action against him. The set-off is based upon an agreement for the sale of timber to be delivered at the stump by Scott, the vendor, to Stewart. The purchase price was to be the cost of cutting and an agreed sum per thousand feet. The contract was in writing. After its execution, Stewart concluded that he could have the timber cut cheaper than Scott could, and expressed a determination to undertake it. Scott acquiesced. Stewart cut and appropriated about one-half of the quantity agreed upon, and refused to take the residue. The court, against Stewart's objection, received evidence of the number of feet of timber in the trees covered by the contract which were rejected by Stewart and left growing upon the land; and charged the jury that they might return a verdict against him for a sum equal to the contract price of the timber they contained. These rulings are assigned as error.

1. Set-off—
Unliquidated
damages.

Without laying stress upon the want of a certain description, in the written contract, of the lands upon which the trees stood, it is enough to say that it was an executory contract to sell timber which (in part) was never completed by delivery.   After the vendee refused to proceed in execution of the contract, the vendor did not make an offer of delivery in accordance with the terms of the written contract, but retained the trees in their natural state.   The measure of his recovery therefore would not be the contract price of delivered timber, but the damages sustained by reason of the vendee's breach of contract.   But these damages are unliquidated, and unliquidated damages, even when arising from breach of contract, are not the subject of set-off, though they may be recouped in a proper case.   *Gerson* v. *Slemons,* 30 Ark., 50; *Bloom* v. *Lehman,* 27 *ib.,* 489; *Clause* v. *Printing Company,* 118 Ill., 612; *Holland* v. *Rea,* 48 Mich., 218; *Carter* v. *Jaseph, ib.,* 615.

The court erred in admitting the testimony and giving the instruction referred to.

2. Trespass by mortgagor.   When the contract for the sale of the timber was entered into, Scott, the owner, was in possession of the land, but there was a subsisting mortgage upon it, executed by him to secure a debt due to a non-resident firm.   It is argued that the contract of sale is void, and that no recovery can be had, because it was made in contravention of the statute enacted to punish persons who fell trees upon another's land without his consent.   Two provisions of the law are appealed to, to sustain the contention, viz., sections 1658 and 1659 *et seq.,* Mansfield's Digest.   But it is not apparent that the legislature intended that either provision should embrace a mortgagor in possession.   One section is directed at "every person who shall wilfully commit any trespass * * * upon the lands of any other person " (sec. 1658, *sup.*); and the other against those who, "without lawful authority, wilfully and knowingly enter upon lands belonging to this State," or to any corporation or person, other than the party accused.   Secs. 1659, 1663, *supra.*

The mortgagee is in common entitled to the possession of the mortgaged lands; but until he takes it legally, the possession of the mortgagor is not illegal, and his entry is not in itself a trespass. He is not therefore within the letter of the statute. Moreover, the expressed intent of the legislature is to visit punishment only upon those who cut trees upon *the lands of another.*

In popular acceptation the mortgagor remains the owner of the land, and the popular belief is not far from legal accuracy.

It is common to say that the legal title vests in the mortgagee, but his interest is regarded as a title only for the purpose of enforcing his equities. It lacks many of the essentials of a title. He has no interest that can be sold on execution, and his widow does not take dower in his interest in the land, notwithstanding the statute makes every substantial interest in real estate subject to sale under execution, and the subject of dower. A power to sell is not necessarily a power to mortgage, nor is a power to mortgage a power to sell, and it is held that giving a mortgage upon land by one who has already conveyed his title by deed is not disposing of the land, within the meaning of a statute which made it a felony to make a fraudulent second sale. *People* v. *Cox*, 45 Cal., 342. Payment of the debt at its maturity destroys the estate, without a reconveyance or release by the mortgagee. *Schearff* v. *Dodge*, 33 Ark., 340. Equity always regards the mortgagor as the owner of the land, and the mortgagee as holding a security only for his debt; and a court of law, in a controversy between the mortgagor and a stranger to the mortgage, does not regard the mortgage as a conveyance. For example, in a suit by the mortgagor for possession, it is no answer for a stranger to say that the title is in another by virtue of the mortgage. "It is an affront to common sense," said Lord Mansfield in *Rex* v. *St. Michaels*, 2 Doug., 632, "to say the mortgagor is not the real owner." If then, in popular and legal acceptation, the mortgagor is the owner of the land, there is no

reason for attributing to the legislature the intent to punish him under the provision of the law referred to.

There is a limit upon his right, as against the mortgagee, to cut trees growing upon the mortgaged premises, but the statute does not purport to punish waste as distinguished from trespass. A rational construction of the act does not require an expansion of its terms to meet that class of cases. It is a statutory crime also to sell mortgaged property with intent to defraud the mortgagee. Mansf. Dig., sec. 1693, as amended by Acts 1885, p. 120. As the mortgage lien continues to bind the trees grown upon the land after they are severed from the soil, a sale of them made for the purpose of defrauding the mortgagee would be in the face of the statute. A contract for that purpose would therefore be void, and the courts would refuse to enforce it. *O'Bryan* v. *Fitzpatrick,* 48 Ark., 487.

But there was no evidence at the trial which conclusively stamps the transaction as a fraud upon the mortgagee. It was proved only that 1560 acres of land had been mortgaged to secure a debt of $2500. The value of the land without the timber may have been so greatly in excess of the mortgage debt that no intent to defraud the mortgagee could be presumed. The court was not asked to direct the jury to consider the question of fraud; and there was no error in the refusal to charge, as requested, on the theory that the contract contravened the other sections of the statute first cited above. But for the errors indicated it is ordered that the judgment be reversed, and the cause remanded for a new trial.

3. Illegal contract to sell mortgaged property.