GERMAN-AMERICAN INSURANCE COMPANY *v.* HUMPHREY.

Opinion delivered April 25, 1896.

MORTGAGE—PAYMENT—SATISFACTION.—THE Entry on record of the satisfaction of a chattel mortgage is not essential to the removal of the incumbrance, where the mortgage debt has been paid off and cancelled.

FIRE INSURANCE—FORFEITURE.—Where a policy of fire insurance provides that it shall be void if the property insured be incumbered by mortgage, the giving of a mortgage on the property avoids the policy absolutely, though the mortgage was paid off and cancelled prior to a loss.

SAME—AUTHORITY OF AGENT.—An insurance agent who has been furnished with blank applications, and with policies duly signed by its officers, and who has been authorized to take risks, and to issue policies by simply signing his name, to collect premiums and cancel policies,—all without consulting his principal,—has power to waive a condition for forfeiture of the policy in case the property shall be incumbered.

SAME—WAIVER OF FORFEITURE.—An insurance agent, authorized to waive a forfeiture in a policy, may do so orally, though the policy provides that a forfeiture can be waived only by writing indorsed upon or attached to the policy.

SAME—AUTHORITY OF AGENT.—A clerk of an insurance agent who has no authority to make any contract about insurance, or to sign insurance policies, has no implied authority to waive a forfeiture of a policy.

Appeal from Jefferson Circuit Court.

A. B. GRACE, Special Judge.

*Rose, Hemingway & Rose,* for appellant.

1.   John L. Mills had no authority to waive the forfeiture clause in the policy.   He was a mere clerk in the

office of his father, who himself could not waive it.   54 Ark. 75; 60 *id.* 532.   The moment the chattel mortgage was placed on the property, the policy was void.   No return of the premium was required.   May on Ins., sec. 567; 53 Ark. 155; 151 U. S. 452.

2.   The validity of the provision forfeiting the policy in case the property should become incumbered is well sustained.   May on Ins., sec. 571; 88 Mich. 94; 50 N. W. 100; 122 Pa. St. 128; 15 Atl. 671; 119 Pa. St. 449; 13 Atl. 317.

*N. T. White* and *Bridges & Woolridge,* for appellee.

1.   Whether there was a waiver by John L. Mills was a question for the jury.   The policy was only suspended during the life of the mortgage, and, when it was canceled and paid off, the policy was in full force. May on Ins., sec. 292; 61 Iowa, 577; 122 Pa. St. 128; May on Ins., sec. 294, p. 589.

2.   R. H. M. Mills was the general agent of the company at Pine Bluff, who had authority to solicit insurance, countersign and deliver policies, and collect premiums, and John L. Mills was a clerk in his office and solicited insurance, delivered policies, and collected premiums.   The tendency of the courts now is that such an agent may waive forfeitures.   See May on Ins. secs. 143, 144, 294*b*, 294*c*, 132, 152, 502*a*, etc; 84 Ind. 253; 20 Am. St. 809; *id.* 51, 11; 23 *id.* 62; 24 S. W. 804; 28 *id.* 453; 69 Fed. 71; 21 Am. St. 721; 25 S. W. 685.   Mills was notified of the mortgage, and failed to cancel the policy.   Notice to the agent is notice to the company.   May on Ins., secs. 132, 152, and note 6 to sec. 132; see also 52 Ark. 11; 26 S. W. 928; 53 Ark. 494; Richards, Ins., p. 75.

WOOD, J.   1.   The plaintiff sued upon a fire insurance policy, for the loss of certain hotel furniture.   The defense was based upon alleged noncompliance with

<div style="text-align: right; font-size: small;">When<br>mortgage<br>satisfied.</div>

the terms of the policy, which provided "that if the sub-
ject of the insurance be personal property, and be or
become encumbered by a chattel mortgage," the policy
should be void.   The property covered by the policy
was mortgaged after the issuance of the policy.   But
the plaintiff contends that the policy was only suspended
during the continuance of the mortgage, and was revived
by the discharge of the mortgage before the loss occur-
red.   There was proof, though meagre, to support the
finding that the mortgage was cancelled before the fire,
although the record was not satisfied until after.   The
satisfaction of the record was not essential to the
removal of the incumbrance.   If the mortgage was paid
off and cancelled, it was sufficient.   May, Ins., sec. 292;
*Hawkes* v. *Dodge County Mut. Ins. Co.*, 11 Wis. 188;
*Smith* v. *Ins. Co.*, 60 Vt. 682; *Merrill* v. *Agr. Ins. Co.*,
73 N. Y. 452.

When policy
of insurance
forfeited.
　　　　But the proposition that the incumbrance, while it
existed, only suspended the policy, contravenes the un-
ambiguous terms of the contract, which the parties
themselves have made.   The language of the clause quoted
*supra,*in its plain, ordinary, and popular sense,indicates a
total extinction of the policy if the property be incum-
bered, and not a suspended animation thereof, subject to
be revived upon payment of the mortgage debt.   Courts,
by interpretation, cannot ingraft upon insurance con-
tracts, any more than upon any other, a meaning totally
foreign to that which the plain terms employed by the
parties themselves convey.   It is undoubtedly true that
where the contract, on account of any ambiguity in the
language used, is reasonably susceptible of different con-
structions, that construction should be adopted most
favorable to the insured.   *Imperial Fire Ins. Co.* v.
*Coos Co.*, 151 U. S. 452; 1 May, Ins., sec. 175, 176, and
authorities cited.

The insurer has the right to contract against any possible risk of loss or embarrassment incident to incumbering the property insured. If it be said that, where the mortgage is paid off, there is no longer an incumbrance and increase of risk, still as to whether or not the mortgage had been paid off would be the question, and one that often could not be settled without expensive litigation. The insured mortgagor might enter into collusion with the mortgagee to defraud the insurance company after the loss occurred by claiming that the mortgage had been paid off and discharged, when in fact it had not. Unfortunately, all men are not honest. Without some such provision in the policy, the unscrupulous would have an inviting opportunity, after a loss, to divide the spoils, at the expense of the insurer. Doubtless some such considerations as these prompted the clause in the policy under consideration. The clause is reasonable and clear, and the parties had the right to thus contract. The opinion in *Imperial Fire Ins. Co.* v. *Coos Co.*, *supra*, and the numerous authorities there reviewed, leave no doubt of the correctness of our ruling. *Contra*, counsel cite, May on Fire Insurance, at page 589, sec. 294, where he says: "An incumbrance in violation of the policy only suspends it, and, if paid before the loss, the policy revives;" and the learned author cites *Kimball* v. *Monarch Ins. Co.*, 70 Iowa, 513. An examination of that case will show that, after the mortgage had been paid off, the insured assigned the policy, and the company indorsed upon it its assent to the assignment. This was tantamount to the issuance of a new policy. It was a waiver of forfeiture. So the case cited does not support the text.

2. It is also contended by the appellee that, if there was a forfeiture, it was waived by an agreement of the plaintiff with John L. Mills, clerk of the local agent, to the effect that the assured should see the mortgagee, and

<span style="float:right">Power of insurance agents to waive conditions.</span>

have the mortgage canceled, and that the policy should remain in force. And appellee says that said agreement on his part was performed before the loss occurred. Such an agreement, if made by one having authority, would be a waiver of the forfeiture. *Pratt* v. *Ins. Co.*, 55 N. Y. 505. Since counsel for appellant's have not questioned here the sufficiency of the evidence to prove such an agreement, we will treat the verdict as conclusive on that point. Appellant questions only the authority of the clerk of the local agent to make such agreement. The testimony as to the authority of the agent and his clerk is related by Jno. L. Mills as follows : "R. H. M. Mills is my father, and I am a clerk in his office. I never make any agreement about insurance, other than the conditions in the policy. The only contract we have is the policy. I am not a partner with my father, but only a clerk. I merely sell the policies, and receive the premiums. My brother and I merely do the office work for my father. I have no authority from the German-American Insurance Company. My father has never appointed me sub-agent for them. I have no power, from the agent or otherwise, to alter any of the terms of the printed contracts, nor to make any changes in a policy of insurance. I have no power to sign policies, but they are all signed by my father. I solicit insurance, and fill up blank policies for my father's signature. I filled up this one. This policy is signed by my father, who is the only person authorized to sign it. I am simply a soliciting agent and clerk, without any authority to modify the contract embodied in the policy."

The policy provides that "no agent shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions or conditions no agent shall have such

power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon, or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached."

Under the express terms of the policy, the placing of a mortgage upon the property *ipso facto* avoided the policy. The forfeiture thus created could only be waived by one who had authority to do so, and authority, too, as high as that by which the contract was made in the first instance. *Hamilton* v. *Aurora Fire Ins. Co.*, 15 Mo. App. 59.

There is a marked distinction between a waiver of conditions made before and those made after the issuance of a policy. But an agent who has been furnished by his principal with blank applications, and with policies duly signed by its officers, and who has been authorized to take risks, and to issue policies by simply signing his name, to collect premiums, and to cancel policies,—all without consulting his principal,—would certainly be empowered to waive the condition as to incumbrance either before or after the issuance of the policy. And he could waive the forfeiture by parol, notwithstanding the limitations upon his power in this respect contained in the policy. *Ins. Co.* v. *Brodie*, 52 Ark. 11, and authorities cited; *Grubbs* v. *Ins. Co.*, 108 N. C. 472; S. C. 23, Am. St. Rep. 62 and authorities cited; *Fireman's Fund Ins. Co.* v. *Norwood*, 69 Fed. Rep. 71; *Burlington Ins. Co.* v. *Kennerly*, 60 Ark. 532.

If R. H. M. Mills, the local agent, possessed this power, there is nothing in the record to show that he exercised it himself, or that he assented to its exercise by his son. If he could delegate such power to his subordinate, the undisputed proof shows that he has not done so. The work of Jno. L. Mills, as he shows, was

clerical and special. There was nothing in the nature of his employment, or in the manner of the discharge of his duties, from which authority to waive a forfeiture could be inferred. Nor does it appear that the defendant company, or its local agent, held him out to the public as possessing such power.

The court's first instruction was correct. The second was not supported by the evidence.

Reversed and remanded.