HARRIS *v.* COLLINS.

4-6341 150 S. W. 2d 749

Opinion delivered May 12, 1941.

446

*H. Jordan Monk,* for appellant.

*H. K. Toney* and *Rowell, Rowell & Dickey,* for appellee.

McHANEY, J. Appellant, Mary Harris, colored, was the former wife of Earl Harris, now deceased. They were divorced, and a division of property decreed on December 2, 1937, by which the title to lots 7 and 8, block 1, Waters Addition to Pine Bluff, was vested in Earl and two lots 9 and 10, same block and addition, in Mary. On January 14, 1939, Earl Harris, then single, executed and delivered to W. H. Lee a deed to said lots 7 and 8 to secure an indebtedness to said Lee of about $300. Thereafter, on October 3, 1939, Earl was married to appellee, Velma Harris, and on January 15, 1940, he paid the indebtedness due to Mr. Lee and caused him to execute a deed to said lots 7 and 8 to appellee, Rebecca Collins, a sister, without her knowledge or consent, and caused said deed to be placed of record. This latter transaction was handled by Mary, but with the knowledge and consent of Earl. The deed was recorded and returned to either Earl or Mary, but was never delivered to appellee, Rebecca Collins. On May 29, 1940, according to Mary, Earl came to her to borrow $20 to go to a hospital in Little Rock, for an operation, but having advanced him numerous sums from time to time, after their divorce, amounting to $75 or more, she told him she could not give it to him, and he proposed to have his sister, Rebecca Collins, convey said lots 7 and 8 to her (Mary) for a consideration of $75. She let him have the $20. They, Earl and Mary, went to see Rebecca to get her to make the deed which she agreed to do, but it was not done at that time. Earl left for the hospital in Little Rock on May 30 and was killed in a crossing accident, and on the next day, May 31, Rebecca conveyed said lots by deed to Mary, who, on June 5, executed a deed of trust to appellant Eddie K. Monk, to secure an indebted-

ness of $250 to her attorney, for services rendered and to be rendered. Six days later, on June 11, 1940, Rebecca Collins brought this action to cancel her deed to Mary. Velma Harris, the widow of Earl who died intestate, was appointed administratrix of his estate, and on July 9, 1940, intervened in said action making Eddie K. Monk a party, and sought to have her dower and homestead interest in said lots protected. Issue was joined and a trial had, resulting in a decree holding the deed to Mary from Rebecca was given to secure a debt of $75, for which a lien was decreed on said lots, and in canceling the deed of trust or mortgage from Mary to Eddie K. Monk. Title to an undivided one-half interest therein was vested in Velma Harris, as her dower, in fee, and the other half in fee in the collateral heirs of Earl Harris, Rebecca Collins and others. This appeal followed.

It is conceded by all parties that the deed from Earl Harris to W. H. Lee was made to secure an indebtedness of about $300. It was, therefore, an equitable mortgage, although a deed absolute in form. *Brewer* v. *Yancey*, 159 Ark. 257, 251 S. W. 677. In this state, the naked legal title to real property included in a mortgage passes to the mortgagee, or to the trustee in a deed of trust, to make the security available for the payment of the debt. *Foreman* v. *Holloway & Son*, 122 Ark. 341, 183 S. W. 763; *Whittington* v. *Flint*, 43 Ark. 504, 51 Am. Rep. 572. It is also conceded that the debt secured by said deed was paid by Earl Harris to Mr. Lee on or about January 15, 1940, at a time when Velma and Earl were husband and wife. When this debt was paid, the lien of the mortgage became extinct. *Baily* v. *Rockafellow*, 57 Ark. 216, 21 S. W. 227.

In *Stebbins* v. *Clendenin*, 136 Ark. 391, 206 S. W. 681, it was said: "It was conceded, for the purposes of the demurrer, that appellee acquired an equitable mortgage from appellant upon said real estate to secure an indebtedness of $500 and interest; that thirteen years thereafter appellee accepted full payment of the indebtedness, but refused, after receiving payment, to reconvey the property. By acceptance of the debt, appellee necessarily acknowledged that she had held the lands from the beginning in the capacity of trustee to secure a debt.

Her holding constituted her a trustee coupled with an interest in the land to the extent of the debt. The payment of the debt eliminated her interest and left her the title as a naked trustee. By accepting the payment, appellee clearly waived the right to invoke the statute of limitations, or laches by appellant, as a defense to the suit.'' In Jones on Mortgages, vol. 2, 8th Ed., § 1136, it is said: ''To revest the title by performance of the condition, the performance must be substantially and formally within the terms of the condition. The estate of the mortgagee is at law defeasible only by the performance of the condition strictly in the manner and at the time stipulated. When this is done, the estate reverts back to the mortgagor without any reconveyance, by the simple operation of the condition.'' See, also, Jones on Ark. Titles, § 955; *Schearff* v. *Dodge,* 33 Ark. 340; *Stewart* v. *Scott,* 54 Ark. 187, 15 S. W. 463. In *Schearff* v. *Dodge, supra,* it was held that payment of the debt secured by a mortgage discharges the lien and revests the legal estate in the mortgagor, and in *Stewart* v. *Scott, supra,* it was held that payment at maturity destroys the mortgage estate without a reconveyance or release of the mortgage. In *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348, 35 S. W. 428, 54 Am. St. Rep. 297, it was held that the entry of satisfaction on the record of a chattel mortgage is not essential to the removal of the incumbrance, when the mortgage debt has been paid off and canceled. Here, Mr. Lee had a deed absolute, but when the payment was made which was the condition, as between him and Earl Harris, the title revested in the latter, and he, Lee, had no title to convey to Rebecca Collins and she acquired no more title thereby than Lee had. In order to clear the record and to guard against the acquisition of rights by third parties or innocent purchasers it was necessary either to reconvey to Earl Harris, or to satisfy the record of the deed as a mortgage. But neither Rebecca Collins, Mary Harris nor Eddie K. Monk was a third party or innocent purchaser, for Rebecca knew nothing of the conveyance to her which was without consideration, and Mary and Monk knew all the facts, Mr. H. Jordan Monk, for whose benefit the

mortgage was given, having prepared all the deeds and the deed of trust or mortgage, and Mary having been quite active in getting all of them executed.

We, therefore, conclude that Lee's deed to Rebecca conveyed no title, and that the subsequent conveyances were likewise ineffectual to convey the title, all of which should have been canceled as clouds on title to lots 7 and 8, block 1, of said addition. If Mary has a claim against the estate of Earl Harris she may present same to the administratrix of his estate and to the probate court for allowance, but she has no lien on said lots by virtue of the conveyances aforesaid. In this respect, the decree will be modified, and, since the title to real estate is involved, the cause will be remanded with directions to so modify the decree as to conform to this opinion.