FARRIS & DUNN v. KING, et al.

SPECIFIC PERFORMANCE—Where lands were conveyed by deed absolute, but the conveyance was intended to secure the payment of a note, and the vendee gave an obligation to re-convey on payment: *Held*, on payment of the note, the reconveyance should be made.

APPEAL FROM CALHOUN CIRCUIT COURT.

HON. G. W. McCOWN, *Circuit Judge.*

*Garland & Nash,* for Appellants.

HARRISON, J.—In this case the appellees, the widow and heirs at law of James King, deceased, filed their complaint in equity for the specific performance of a contract to convey a tract of land and to quiet the title to the same.

They alleged that James King, in his life time, conveyed the land to Anderson P. Farris, to secure the payment of a note for $355 91, but by an absolute and unconditional deed—taking from him, however, at the time, an obligation, for a reconveyance, of the following tenor:

"MILLER'S BLUFF, ARK., February 2, 1857.

This is to certify to all whom it may concern, that I, A. P. Farris, agree to convey to James King the south-east quarter of the south-west quarter of section number seven, in township fifteen south, of range number fourteen west, containing forty acres; also, the north-west quarter of south-east quarter of section number seven, same range and township as above stated.

The condition of the above obligation is such, that the said James King agrees to pay to the said A. P. Farris, by the first day of January, one thousand eight hundred and fifty-eight, the just and full sum of three hundred and fifty-five $\frac{91}{100}$ dollars, with interest thereon at the rate of ten per cent from the first January, 1857, on said note; then I, A. P. Farris, agree and bind myself to make good the title to said King, otherwise this is void.

Given under my hand and seal.

A. P. FARRIS, [*Seal.*]

Test: HAMILTON HUNTER."

And that, after giving this security, he became further indebted to Farris in the sum of $179 09; that he paid Farris the note, and also the subsequent debt before the former fell due—$254 00, on the 10th day of October, 1857, and the remainder of the indebtedness in the sale to him of another tract of land, called the "Graham place," and that after his death, which occurred in November, 1857, Nancy King, his widow, not knowing that the note had been entirely paid, to relieve the land from the incumbrance, let Farris have 6500 pounds of seed cotton, raised by King that year, worth $200.

They then charged that notwithstanding the note had been paid, Farris had not reconveyed the land, either to King in his lifetime, or to his heirs since his death, but had sold and conveyed it to his co-defendant, Joseph B. Dunn.

The defendants, admitting the conveyance from King, and that Farris gave the obligation for a reconveyance, denied that the conveyance was made as a security for the note, and averred that it was an absolute sale. They denied that the obligation was given at the time of making the conveyance, or had any connection whatever with it, and asserted that it was not given until several days thereafter, and in pursuance of a subsequent agreement to let King have the land back. They denied that any part of the note had been paid, and that any part of the consideration for the " Graham place," which, they alleged, was purchased before the conveyance of the land in controversy, was a payment on the above mentioned indebtedness. The $254 King paid, and the seed cotton delivered by his widow, they claimed were paid and delivered towards the satisfaction of the latter debt, which they insisted was much larger than as stated by the plaintiffs, and exceeded the value of the cotton and the money received.

The court decreed that the deed to Dunn be set aside, and that Farris should convey the land to King's heirs.

With the exception of the deeds referred to in the pleadings, the only material evidence in the case was the testimony of John C. King and Julia Morrison, two of the plaintiffs, read on behalf of the plaintiffs.

Although, from the view we take of the evidence, it is of no importance to determine whether the conveyance was a sale or merely a mortgage, we think it is clearly shown to have been the latter.

John C. King, who was then twenty-one years old and a member of his father's family, and well acquainted with his business, testified that he never heard of a sale of the land but knew that his father conveyed it to Farris to secure the payment of the note, and that Farris gave the obligation to convey the title back to him when the note should be paid. The place, it seems, was his homestead; he was residing on it at the time of his death, and that year raised a crop on it, and his widow and family continued to reside there after his death. It is, therefore, unlikely that he should have sold it and bought it back within six days. (The deed was dated the 27th day of January, 1857, but not recorded until the 6th day of February.)

Then the amount of the note $355 91., manifestly, had no reference to the value of the land as ascertained by the usual and ordinary methods of estimation, and was not such a round or even sum as is usually paid for real estate, and it drew interest from the first day of January, a date anterior by a month and a day to the alleged purchase. But, as we have remarked, it is unnecessary to decide whether it was a mortgage or sale. Farris was bound to convey the land back to King upon the payment of the note, and such payment is clearly shown by the evidence.

John C. King testified that he was present when the $254 was paid, and he saw the amount credited upon the note, and that Farris afterwards told him that that payment, together with the cotton which he received from his mother, would pay the note and leave a balance sufficient to purchase supplies for her family for a year. Julia Morrison testified that she heard Mrs. King tell Farris that she was letting him have the cotton to pay for the land, and that he told her it would be sufficient for the purpose, and there would be something over to buy groceries for the family.

The statement of John C. King, that when the money was paid it was endorsed as a credit upon the note, could, if untrue, have easily been shown to be so by the production of the note which, if unpaid, should have been in Farris' possession; but it is somewhat remarkable, and it is a circumstance that must weigh against the defendant, that he neither produced the note nor testified himself in the case.

The decree of the court below is affirmed.