## KING *v.* CRONE.

### Opinion delivered July 6, 1914.

1. DEED—DEED AS MORTGAGE—PREVIOUS TRANSACTIONS.—Where the evidence shows that K. sold certain land to C., giving a bond for title for the same and taking purchase money notes from C., the transaction will be held to be a sale, irrespective of previous transactions between the parties, whereby K. acquired title from one H. by a method which C. declares constituted a mortgage between himself and K.

2. VENDOR AND PURCHASER—SALE OF LAND—RESCISSION.—The voluntary rescission of a. contract and surrender of a bond for title and the possession of the land for the unpaid purchase money notes, releases all the rights that a purchaser had in the land.

3. APPEAL AND ERROR—FINDINGS OF CHANCELLOR—REVERSAL.—Where the findings of the chancellor are against the decided weight of the testimony, the decree will be reversed.

Appeal from Cleburne Chancery Court; *George T. Humphries,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

J. M. Crone brought this suit to have a deed from Hammock to King declared a mortgage, alleging that he had purchased the land, 138 acres, from Hammock and

borrowed ,money from King with which to pay for it; that Hammock executed the deed to King, which was intended only to secure the repayment of the money to him, and that on the same day King executed to plaintiff a bond for title for the east portion of the land containing seventy acres, and also executed to one Arthur Harkey a bond for title for the west portion, containing sixty-eight acres, and took their notes for the payment. One tract of this land was transferred to three different people, but afterward deeded again to King, on January 2, 1908, who sold it to appellee Crone, giving him bond for title for the entire tract, to which he agreed to execute a deed upon the payment of $950 on January 1, 1909, with interest at 10 per cent. It was alleged that the deed from Hammock to King was intended as a mortgage to secure the payment of the money advanced, and the prayer was that it be so declared and that the court ascertain the amount due from plaintiff and declare the same a lien upon the land.

Appellant King denied that Crone purchased the land from Hammock and borrowed the money from him with which to pay for it, and that the deed executed by Hammock to him was intended as a security for money advanced to plaintiff. Alleged the sale of the eastern portion of the land to plaintiff and execution of bond for title therefor, and the sale of the western portion to Arthur Harkey and execution to him of a bond therefor, and alleged that on January 2, 1908, he executed a bond for title to plaintiff for the entire tract of land, agreeing therein to convey it upon the payment by him of $1,200, of which $250 was due in November, 1908, and $950 on January 1, 1909, for which notes were executed by the plaintiff; that the notes were never paid, and thereafter the trade was cancelled, and he surrendered the purchase money notes to the plaintiff, who surrendered the bond for title and turned over the possession of the land to him. That the plaintiff then rented the lands and gave his note in payment of the rent therefor, until 1912,

when he rented the lands to one Boyd, with the knowledge of plaintiff and without any objection on his part.

We do not deem it necessary to go into the contention about whether this was a sale to Crone with the purchase money borrowed from King and the deed made from Hammock to him as security therefor, since both parties agree that the entire tract of land was sold by King to appellee Crone on January 2, 1908, and the bond for title executed to convey same upon the payment of the purchase money notes. When these notes for the purchase money became due, the appellee did not pay them, and surrendered the bond for title to the appellant upon the delivery to him of the purchase money notes. These facts are undisputed.

Appellant testified that Crone was unable to pay the purchase money notes and proposed to surrender the bond for title for them and cancel the trade, that he agreed to this, and that it was done. That he thereafter rented the lands to Crone for the years 1910-11-12 for $200 a year, and the notes taken each year therefor, recited that it was for rent of the lands. That he rented the lands to Boyd in 1913 with Crone's knowledge and without any objection from him.

Edwards testified that he heard a conversation between the parties, in which Crone told King it appeared he could never get in any better shape, and that if it suited him he would rather surrender his bond for title to the place and take his notes back, that King replied he preferred to have the money but would do this, and turned over the notes to Crone, who gave him the bond for title. That Crone then said he would be glad to rent the place for a year, and King told him he might have it. Heard Crone say he would like to rent the place after King had surrendered the notes to him, and he had surrendered the bond for title, and he understood that Crone did rent the place. He heard nothing said about the bond for title being surrendered for a new one.

Crone stated that he gave the notes, $950 due January 1, 1909, and $250 due November 1, 1908, for the pur-

chase money, and took the bond for the conveyance upon the payment of the last note. That on January 1, thereafter, the bond for title was extended twelve months. He did not claim to have paid anything whatever on the $950 note, nor all the $250 note, which recited that it was given for rent, and Crone only claimed that $50 of it was for purchase money. He said, "I made a trade with Mr. King and gave him my note for $950 as purchase money of the land, and a rent note for $250. Fifty dollars of this money was a part of the $1,000 of purchase money, and $200 of that was rent or interest for the year 1908; and he gave me a bond to convey the title upon the payment of the note due January 1, 1909."

Crone admitted that he surrendered the bond for title upon the delivery to him of the $950 purchase money note, and that King also surrendered to him at the same time his note for $200, which had been given for the rent of 1911. He claims that after he surrendered the bond for title, he went to get a new bond and King told him that his word was as good as his bond. That was about two weeks after the surrender of the bond when he went to King for a renewal of it. He paid the taxes on the land until it was rented to Boyd.

Boyd, to whom the land was rented for 1913, testified that he had a conversation with Crone in which he asked if he had rented the land from King, and he told him he had, and understood from him that King owned the land. This conversation occurred after he moved on the place. Crone said he was indebted to King and told him to come up the following Saturday and bring the two rent notes and he would pay them. Said the notes were for rent of the place. Said he paid some of them, but had not paid either of them in full. One was for 1911 and one for 1912. That Crone knew when he went on the land and raised no objection nor said anything about his having any claim thereto. Was present when King showed the rent notes which he held to the plaintiff, who said they were all right. When he took possession of the

lands, the fences had fallen down and the place was going to waste.

Joseph M. Boyd also testified that Crone asked him from whom his father had rented the place and was told from Mr. King, and in this conversation he asked Crone who owned the place and was told that Mr. King owned it. Witness stated that the fences were in bad condition, and he did not notice any improvement on the place that appeared to have been made during the past four or five years.

King stated that Crone paid the taxes, but that he had either loaned him the money with which to pay them, or allowed him credit therefor.

The court found that Crone had purchased the lands from Hammock and borrowed the money from King with which to pay therefor, and that the deed executed by Hammock to King conveying them was as security for the money and in the nature of a mortgage, made a statement of the account between the parties and declared a lien upon the lands for the amount still due, and from the decree this appeal comes.

*W. R. Casey* and *Sam Frauenthal*, for appellant.

1. Before a conveyance which is absolute on its face will be declared to be a mortgage, the evidence that it was intended by the parties to be a mortgage must be clear, unequivocal and convincing. 88 Ark. 299; *Id.* 236; 75 Ark. 551; 87 Ark. 527; 105 Ark. 314.

Where a chancellor's findings are made upon conflicting testimony which is not clear, convincing and beyond reasonable controversy as required by law, such findings will be set aside on appeal. 104 Ark. 475.

2. The evidence, as shown by the testimony both of the appellant and appellee, is clear that the notes given for the land on January 2, 1908, were surrendered by appellant to appellee, and that the bond for title given on that date was surrendered by appellee to appellant, whereby that contract for the conveyance of the land was cancelled. A bond for title to convey land may be rescinded by the voluntary surrender or cancellation of

the written instrument with that intent. 42 Mich. 518; 28 Pa. St. 426.

3. Appellant denies that he made any agreement to redeliver a bond for title; but if such agreement was made, it was oral and not in writing, and was within the statute of frauds. 20 Cyc. 227; Kirby's Dig., § 3064.

4. There is no evidence that appellee made any tender of any alleged sum due by him to appellant before the institution of the suit, nor attempt to make any tender good by bringing it into court; therefore, in no event was he entitled to judgment for costs. 33 Ark. 340; 34 Ark. 582; 90 Ark. 206; 96 U. S. 580; 72 Ark. 210; 84 Ark. 521; 85 Ark. 30.

*Wm. T. Hammock,* for appellee.

1. Counsel reviews the testimony at length, and urges that the chancellor's finding rests upon evidence that is clear, convincing and beyond reasonable controversy; also that a chancellor's finding of fact will not be disturbed on appeal unless clearly against the preponderance of the evidence. 67 Ark. 200; 73 Ark. 489; 89 Ark. 318; 105 Ark. 460; *Id.* 663; 103 Ark. 478; 90 Ark. 173; 91 Ark. 70; *Id.* 555; 92 Ark. 35; 95 Ark. 487.

2. Where a deed which is absolute on its face is executed as security for the payment of a debt, it will be construed to have only the force and effect of a mortgage. 5 Ark. 321; 40 Ark. 149; 106 Ark. 169; 106 Ark. 587; 103 Ark. 493, 494.

If Crone borrowed money from King to pay Hammock for the land, and caused the latter to execute a deed to King as security therefor, the conveyance was a mortgage. 27 Ark. 404; 40 Ark. 149.

"Every instrument intended to secure the payment of money, whatever its form, is in equity a mortgage." 2 Summer, 533; Story's Equity, § 1017; 20 Ohio 469; 3 Pick. 484; 15 Ill. 505; 51 Ark. 438; 103 Ark. 493, 494.

3. The evidence shows that the bond for title of 1908 was surrendered by Crone on King's promise to renew the same. If this surrender was on an agreement

of King's to renew the same, contemporaneous with such surrender, it does not fall within the statute of frauds.

4. A tender was rendered impossible by the act of King in refusing to give appellee a statement of indebtedness and his refusal to settle with appellee, and a tender was not necessary.

KIRBY, J., (after stating the facts). (1) It is contended that the chancellor's finding is clearly against the preponderance of the testimony, and with this contention we agree. The evidence is undisputed, without regard to the nature of the first transaction between Hammock and King, that King thereafter sold the land, on June 2, 1908, to Crone and executed a bond to convey the title upon the payment of the purchase money notes, that these notes were not paid, that the bond for title was extended for twelve months and at the end of that time that the trade was cancelled and the bond for title surrendered to King, the maker, who at the same time delivered to Crone the unpaid purchase money notes. That the possession of the land was also delivered to King and that Crone thereafter rented it from King, giving his notes for the rent, which specified they were for the rent thereof. It is true that Crone says that a week or two after the transaction of the surrender of the bond for title that he asked King to renew the bond and make him another bond for title, and was told that his word was as good as his bond, and that he continued in the belief that the bond would be executed, until after the lands were rented to Boyd in 1913. He does not deny that he became a tenant of King after the surrender of the bond for title and executed notes for the rent of the land, some of which he paid. The voluntary rescission of the contract and surrender of the bond for title and the possession of the land for the unpaid purchase money notes released all right that appellee had theretofore. *Friar* v. *Baldridge,* 91 Ark. 140; *Sullivan* v. *Dunham,* 42 Mich. 518; *Raffensberger* v. *Cullison,* 28 Pa. St. 426.

(2) If appellee had surrendered the bond for title on condition, contending that a new one should be executed,

of course, it would not have had effect to release his interest, but, according to his own statement, it was a week or two after the transaction of the surrender of the bond before he asked for a renewal of the bond, and appellant denied that he ever agreed to renew the bond or made any statement at all about his word being as good as his bond, that indicated any intention to renew it, and if he had at a later time made such an agreement to redeliver the bond to convey the title, it would have been within the statute of frauds, and there was no writing to bind him to its performance. 20 Cyc. 227.

(3). The findings of the chancellor are against the decided weight of the testimony, and the decree is reversed and the cause remanded with instructions to enter a decree dismissing appellee's complaint for want of equity.